4th Casey a day, Hill v. Service Employees International Union. Mr. Messenger. Thank you, Your Honor. May it please the Court. My name is Bill Messenger, and I represent Rebecca Hill and seven other appellants, all of whom provide either child care or personal care services in their own homes, mostly to their own family members. Now this case concerns whether the State of Illinois can extend exclusive representation beyond its actual public employees and designate a mandatory representative to speak and contract for other citizens in their relations with government, such as the appellant providers here. Now the District Court held that the State can do so, and without having to satisfy First Amendment scrutiny, and therefore for any rational basis, because individuals are supposedly not associated with their own representative or its actions as their proxy. I submit that the District Court should be reversed because its opinion is both illogical and it's limitless in the sense that it would allow the government to impose an exclusive representative on practically anyone. Now first, the decision is illogical because the SEIU cannot have the right to speak and contract for individual providers, and yet those providers not be associated with the SEIU in speech and contracts. That's like saying that a principal isn't associated with the acts of his own agents. Exclusive representation does compel association, and the reason it does so is it forces individuals into a mandatory agency relationship with the SEIU, and that does impinge on associational rights for the exact same reason the 11th Circuit held in Mulhall with respect to employees, that it creates this mandatory agency relationship with an organization with whose views and principles the individuals may disagree. However, unlike the employees in Mulhall, exclusive representation in this instance isn't justified by a countervailing state interest. Namely, it's not justified by the labor peace interest under the Supreme Court's holding in Abu. So unlike with unionization of employees, there is no countervailing state interest that justifies the unionization of independent providers and other individuals who are not employees. And then second, the district court's opinion lacks a limiting principle in the sense it would give the government free reign to designate a mandatory advocate to speak for practically anyone, and I submit that this case represents not the top of the slippery slope, but its bottom. I mean, here Illinois has imposed exclusive representation on people who run child care businesses in their own homes, people who provide personal care services to their own sons and daughters in their own homes, and people who provide child care services to family members in their own homes, all simply because they receive public aid monies for so doing. If that was constitutional, practically anyone could be subjected to a mandatory representative for purposes of lobbying the government, and I submit this is inconsistent with Harris. One of the reasons Harris limited compulsory fees for exclusive representation to only true public employees is because otherwise the court couldn't see where would you draw the line. How else could that be contained? And so the court decided to contain abode and compulsory fees only to where there is a full-fledged employment relationship. And so for a similar reason, exclusive representation should also be confined to only where there is a full-fledged employment relationship, and the reason being is because that is the only place where it's justified by a countervailing state interest, namely the labor peace interest. Now the district court relied on two decisions, which I'd like to address. The first is the Supreme Court's decision in Knight. Knight, however, did not address the compelled association issue presented here because that issue was decided in abode. Instead, in Knight, only addressed whether excluding individuals from union bargaining sessions with their employer infringed on those employees' rights. The employees in that case were faculty members of a university, argued they had a constitutional right to participate in these meetings between the union and the employer, and the Supreme Court said they did not because the government is free to choose to whom it listens, and so if the government chose only to invite the union to these bargaining sessions, that didn't infringe on any right of those individuals to speak to the government. That is not the claim here. The appellant providers do not argue in any way that they have a right to attend the SEIU's bargaining sessions with the state of Illinois or that infringes on their rights by excluding them. Instead, their claim is one of compelled association, that they're being compelled to associate with the SEIU because it's speaking on their behalf, and that is not an issue that Knight addressed. And the reason Knight didn't address it is because the Supreme Court addressed that in 1977 in abode. In abode, the Supreme Court held that exclusive representation of employees is justified by the labor peace interest and that compulsory fees for that representation is justified by the free rider interest. Knight did not reconsider the exclusive representation holding already decided eight years earlier in abode. And then a final word on Knight is that beyond the narrow terms of the decision, in general it's very difficult to believe that when the Supreme Court decided in 1984  it meant to sanction what's happening here, that a state can impose exclusive representation on small business owners and parents taking care of children in their own homes without having to satisfy any constitutional scrutiny. I think that puts far more weight on Knight than the case can possibly bear. And then the other decision the district court relied upon was the First Circuit's decision in DiAgostino. I submit that DiAgostino was wrongly decided and that the Eleventh Circuit got it right. Because there is a circuit split on this issue on whether or not exclusive representation compels association. The Eleventh Circuit held that it did in Mohal. DiAgostino held that it did not. In the First Circuit, there's also an unreported decision out of the Second Circuit, Jarvis, but that more or less follows DiAgostino. And it's also unpublished, so there's really no split there. DiAgostino was incorrectly decided not only for the reasons stated in the brief and those I've already mentioned, but for two other reasons. First, the DiAgostino court relied on Abood for holding the exclusive representation of child care businesses as constitutional. Of course, Harris held that Abood and its labor peace interest do not extend beyond the employment relationship. So that reliance on Abood was an error. And then secondly, the DiAgostino court reasoned that those child care providers were not associated with their representative because the choice of representation was clearly imposed by the government and not by any free choice of the providers themselves. But I submit that only proves why there is a constitutional injury, that it wasn't a free choice by the providers themselves. In any compelled association case, by definition, the government is making the choice for the individual of who they associate with or who speaks for them. So DiAgostino's court's reasoning for finding there wasn't a First Amendment violation is the very reason that this court should find that there is a violation. And so for these reasons, I submit that the court should find in favor of the appellants on both questions. The first of which, of course, is is exclusive representation subject to exacting First Amendment scrutiny? And I submit that at the very least, the court should hold and require that exclusive representation, like any other mandatory association, satisfy that scrutiny. And then moving to the second question, the court should find that the extension of exclusive representation here does not satisfy that scrutiny for the reasons stated in Harris, namely that the labor peace interest that justifies exclusive representation of employees does not apply to non-employee providers. So the court has no other questions. Thank you. Thank you, Mr. Bissett. Mr. Bissett? May it please the court? My name is Frank Bissett, and I represent the state defendants. This court should affirm the dismissal of plaintiffs' claims because the statutes they are challenging do not impair their First Amendment expressive association rights. First, the Supreme Court's decision in Knight alone disposes of plaintiffs' claims because there the court held that the exclusive representation system at issue, just like the one that plaintiffs are challenging here, did not impair the freedom of any bargaining unit members not to associate with their representative. And in addition to Knight, plaintiffs' claims are also foreclosed by the Supreme Court's other expressive association decisions because here the plaintiffs have not been compelled to support the union in any way, nor have they been compelled to accommodate the union's speech, much less accommodate the union's speech in a way that interfered with plaintiffs' own expressive activities. In Knight, the Supreme Court held that the exclusive representation law at issue in no way restrained the unit members' freedom not to associate with the representative. The court pointed out that the unit members were not required to join the representative, nor were they required to support its activities, and those plaintiffs at all times remained free to associate with whomever they chose. Thus, as the First and Second Circuits have already recognized, the Knight decision disposes of this claim and others like it where the plaintiffs have not been required to support the union or join the union, and they face no restrictions on their ability to join whatever associative groups they would like to do. And although plaintiffs argue that the court did not consider the constitutional issue presented here, the court specifically addressed the issue of whether or not the bargaining unit members had it been impaired in their freedom not to associate with the exclusive representative. In fact, the court squarely held the state has in no way restrained appellees' freedom to speak on any education-related issue or their freedom to associate or not to associate with whom they please, including the exclusive representative. And this wasn't just a little part of the decision. It was the entire second part of the opinion, and it was necessary to the decision as a whole because if the court had found that there had been an impairment of the plaintiff's rights not to associate, then the court would have had to move on to the second part of the analysis, which is what ABUD stands for, of whether or not that impairment is justified by a sufficient state interest. And this is an issue that was squarely before the court because that was the basis for Justice Brennan's dissent. Justice Brennan said that there had been an impairment of the plaintiff's right not to associate with the representative, and he would have decided that the ABUD justifications didn't apply here. So this was an issue that was squarely before the court. And the Supreme Court's subsequent decision, Harris v. Quinn, does not change Knight's applicability to this case in any way because Harris doesn't really apply here. Harris, just like ABUD did, went on to this, was about the second part of the analysis. There was a clear impairment of the freedom to associate when the plaintiffs were required to make payments to the union. That's one of the clearest ways that you can impair somebody's associational rights, and that's what Harris and ABUD and Knox and even United Foods talk about. Harris just went to that second part of the analysis where you look to the state's justification. Here, as in Knight, we never even get to that part because there's no impairment of associational rights in the first place. But even in addition to Knight, the court's other precedents on expressive association issues also foreclosed plaintiffs' claims. Those lines of cases illustrate that there are essentially two ways in which a plaintiff's freedom not to associate with an organization can be impaired. The first, which nobody argues is at issue here, is a sort of direct compelled support for that group. That's what you have in Harris and ABUD, where you have a payment and you're subsidizing the speech of the other. The second is a more indirect support. And that's where the plaintiff is required to accommodate somebody else's speech in such a way that it impairs their own ability to engage in expressive activities. And so these types of cases are Hurley, where a parade organizer has to affirmatively allow somebody to march in their parade. Dale and Roberts, where the plaintiff has to affirmatively allow somebody into their groups. In each and every one of these cases, the impairment of the associational freedoms occurred because the plaintiffs were forced to do something to accommodate speech of another. Here, the plaintiffs are not required to do anything to accommodate the union's speech. They are free to remain silent and do absolutely nothing. That's what the statute protects. But then the Supreme Court goes on in Rumsfeld to say that even there are instances in which a plaintiff may be compelled to actively do something to accommodate the speech of another, but there still is no impairment of that plaintiff's associational rights because the accommodation does not interfere with their own expressive activities. So in Rumsfeld, for example, the plaintiffs were law schools who had to host military recruiters. Not only did they have to host them in their space, but they had to send emails and mailers and different things. So they had to affirmatively do something to accommodate the speech of these recruiters. But the court there held there was no compelled speech. There was no forced association because simply letting somebody onto your property to recruit and sending out these mailers are not expressive activities. And so the plaintiffs in Rumsfeld had a much stronger case than the plaintiffs do here because, one, they're not being required to do anything. And even if they were, simply providing services under the terms of a collective bargaining agreement negotiated by a union is not an expressive activity. And briefly, just to touch on Mulhall, the Mulhall case does not create a circuit split. It's not persuasive in any way because there the Mulhall case only looked at the issue of whether the plaintiff had an interest to support standing. The court expressly declined to reach the merits of the First Amendment claim. And in any event, Mulhall can't be used as a way to distinguish Knight because Mulhall never even discusses Knight, never mentions Knight, and never discusses all these other compelled association cases like Dale, Roberts, and Hurley. And so for all those reasons, Mulhall should not be persuasive in this situation. And so unless your honors have any further questions, defense would ask that you affirm the dismissal. State defendants ask that you affirm the dismissal. Thank you. Mr. Kronlund. May it please the court, I'm Scott Kronlund, appearing for the union. Illinois is one of 14 states in which the legislature has given home care or child care workers paid to carry out state programs the opportunity to democratically choose a collective bargaining representative. The court does not have to go further than the Knight case to reject the plaintiff's argument that merely by having a system of exclusive representative collective bargaining, the state is infringing on the associational rights of the bargaining unit workers. The reading of Abood that the plaintiffs are urging the court to adopt was explicitly rejected in Knight. The reading of Abood they urge is that exclusive representative bargaining is an infringement that has to be justified by a state interest in labor peace. The Knight majority rejects that argument. It does so explicitly in footnote 13 on page 292 of the Knight decision. It says the infringement in Abood was the requirement that the workers pay fees to the union. As a more general matter, the Supreme Court's case law provides a test for whether individuals who do not have to do or say anything to support the union or its activities are being passively associated with the union's speech, which is what the plaintiffs are urging. They're urging an inherent dissociation between the bargaining unit workers and the speech of the union. And the test is whether reasonable people would perceive that all the bargaining unit workers agree with the union or its expressive activity. And in this case, unions and exclusive representation and collective bargaining are familiar features of the landscape and reasonable people would understand that in a system like this, not all the workers necessarily support the union or agree with its message. So the plaintiffs here are in exactly the same position as the plaintiffs in the Rumsfeld v. Fair case. There, the law schools didn't like the law that gave the military recruiters access to the campus. And in a colloquial sense, they were associating with the military recruiters, but not in a First Amendment sense because they didn't have to support the speech of the recruiters and reasonable people would understand that they didn't necessarily endorse the recruiters' message. I want to also address the slippery slope argument that there are no limits to such a system because the Supreme Court's case law already cabins systems of exclusive representation so they can port the First Amendment. One limit comes out of City of Madison Joint School District, that you can't have a system of exclusive representation that prevents people from expressing themselves like all other citizens in First Amendment court. And this system doesn't violate that principle. The plaintiffs can express themselves like all other citizens. The second is that if the system required bargaining unit workers to join or support the union or pay fees to the union, it would be subject to heightened scrutiny. That's the Abboud-Harris line of cases. The third is that if the system put pressure on the bargaining unit workers to join or support the union, that was more than what Knight called the pressure people in the minority always feel to join with the majority group. That would likely be subject to heightened scrutiny also. In other words, if the state gave goodies to the people who joined or supported the union, if it gave them higher wages, if it gave them special health benefits, that would likely trigger heightened scrutiny. But again, that's not the case here. And finally, if the system were extended to some type of unusual context in which people would reasonably think that the bargaining unit workers did personally endorse the speech of the union, the situation might be different also. But here we have the standard system of exclusive representative collective bargaining used throughout the United States in the public sector, in the private sector, in other states. And people understand that when the union speaks, it's providing what the Knight Court said aptly was the official collective position. That's what the state is interested in meeting to hearing. It's not necessarily a position agreed to by the bargaining unit workers, so they're not associated with it in a First Amendment sense. Unless the court has questions, we would urge the court to affirm the decision below. Thank you, Mr. Cromwell. Mr. Messick. Thank you, Your Honor. The First Amendment test is not whether individuals are perceived to agree with the organization or speech they're being affiliated with. The question is, have they been affiliated with that speech or organization? Whether or not they agree or disagree simply shows that there has been a violation. Or, in other words, the government cannot compel someone to affiliate with an organization and then say, well, it's obvious the person didn't actually want to, therefore that's exculpatory. The fact that the person doesn't agree with the government-compelled organization is what shows the First Amendment injury. So here, the fact that it's clear that some providers do disagree with the SEIU, including my clients, only shows that's why it infringes on their First Amendment rights to compel them to associate with the SEIU. It's not exculpatory, the fact that SEIU is representing people who disagree with them. Second, I'd like to address the Knight case. The state relies upon Knight and says Knight touched upon an associational argument. That's true, but the associational argument is not the one presented here. The associational argument is whether excluding these individuals from union bargaining sessions infringed on their First Amendment rights. And this is right on page 288. To quote the court, Appellee's speech and associational rights, however, have not been infringed by Minnesota's restriction of participation in meet-and-confer sessions to the faculty's exclusive representative. The court did not, unquote, the court did not consider the compelled association issue being decided here. And ABOOT did discuss this issue in the context of compulsory fees. Union Council mentioned that ABOOT involved compulsory fees, and it certainly did. However, as the court held in Knox, to find a compulsory fee constitutional, there's a two-part test. First, there must be a mandatory association, and that mandatory association has to be found to be justified by compelling government interests. And then second, fees for that mandatory association have to be a necessary incident to that mandatory association. So in finding compulsory fees for employee representation constitutional, the ABOOT court had to first consider, is exclusive representation justified? And then, if so, is a fee necessary incident to that representation? And that's what the ABOOT court did. The ABOOT court held that the principle of exclusivity was justified by the labor peace interest, and then it held that compulsory fees were a necessary incident to it. So ABOOT did decide the exclusive representation issue pursuant to its fee analysis. And later Supreme Court cases realized that, including Knight, which referred back to ABOOT, and also in Teachers v. Hudson, which is discussed in the briefs. So Knight did not revisit the issue discussed in ABOOT. Then moving on to the Eleventh Circuit's decision in Mulhall. State's counsel is correct that Mulhall considered a question of whether employee has standing, the challenge of statutory claim. However, that doesn't make the court's analysis any less persuasive. What the court held in the Eleventh Circuit is exactly what appellants are arguing before you today, that exclusive representation does impinge on associational rights because it forces individuals into a mandatory agency relationship with an organization with whose demands and principles they may disagree. The appellants aren't required to join the union, right? No. They're not required? No mandatory fees. After Harris, that's correct. The mandatory fees have stopped. And they could form their own group, too, right? They could form their own organization. But there's a question of whether they'd be heard. Is that true? Yes. The state couldn't listen to them. In the collective bargain agreement, section 4.1 of each, says the state shall not meet, confer, or discuss with anyone other than the SCIU on the policies that are within the subjects of representation. However, the exclusion from being heard, again, is not the appellant's claim here. That was the issue at night. That is not what appellants are claiming here. And the fact that the appellants and other providers are no longer being forced to join or financially support the SCIU doesn't change the fact that its agency status impinges on their First Amendment rights. And the Mulhall Court actually said exactly that. Mulhall rose in Florida, which is a right-to-work state. And so Mr. Mulhall could not be forced to join the union there or forced to pay fees. And the court said, nonetheless, the fact that Mr. Mulhall could be forced to accept this union as his exclusive representative, which gives the union the representative, the right to both speak and contract for Mr. Mulhall, whether he likes it or not, that impinges on his associational rights and has to be justified by a state interest. And, again, the state interest that they found in Mulhall does not apply here because of the labor peace interest. And then final point, Your Honor. A limiting principle to exclusive representation has still not been suggested by the appellees. The appellees, Mr. Cronlund notes, that exclusive representation has to have certain aspects. For example, the union representative has to have a fiduciary duty to represent everyone it speaks for. But that doesn't limit exclusive representation. All he's saying is that the same exclusive representation that can be imposed on public employees can be imposed on everyone else. And that's something I submit that the court should not adopt or sponsor. Thank you, Your Honor. Thank you, Senator. Thanks to all counsel. The case is taken under advisement.